**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

Lonzell J. Threats,

Petitioner,

v.

J.T. Shartle, Warden,

Respondent.

No. CV-17-0542-TUC-JAS (BGM)

**REPORT AND RECOMMENDATION**

Currently pending before the Court is Petitioner Lonzell J. Threat's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1).   Respondent has filed an Answer to Petition for Writ of Habeas Corpus ("Answer") (Doc. 14), and Petitioner replied (Doc. 23).  The Petition (Doc. 1) is ripe for adjudication.

Pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure,[1] this matter was referred to Magistrate Judge Macdonald for Report and Recommendation.   The Magistrate Judge recommends that the District Court deny the Petition (Doc. 1).

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Initial Charge and Sentencing*

The military court made findings of fact and conclusions of law as follows:

1.      On 22 September 2010, PFC KP alleged that she was raped, forcibly

---

[1] Rules of Practice of the United States District Court for the District of Arizona.

sodomized, robbed, and kidnapped after physical training on Fort Campbell. Private First Class P later gave a description of the perpetrator as a black Soldier about 5'6" or 5'7" in height weighing between 145 and 155 lbs who know [sic] the victim.  During that afternoon, the unit provided CID with a list of Soldiers in the unit who were not at physical training.  The agents then asked the unit which of those Soldiers were black males of medium size and height.

2.      During the early afternoon of 23 September 2010, SPC Johnson told CID that he observed an unknown black male walking and pacing back and forth during physical training hours for approximately the prior two weeks.

3.      In the afternoon of 23 September 2010, the accused was one of three Soldiers requested to go to CID for in-depth canvas interviews, because of the physical description of the alleged perpetrator from PFC P and a list of Soldiers in the unit that were not at physical training.  In an abundance of caution, all of these Soldiers were advised of their rights, in case they became subjects and made statements.

4.      Special Agent Manor first interacted with the accused at approximately 1430 hours on 23 September 2010.  Neither she nor any other CID agent, on 23 or 24 September 2010, asked the accused about how much sleep he had the night prior nor whether he was on any prescription medication.  At approximately 1442 hours, she advised the accused of his rights, and he waived his rights and agreed to discuss the incident without a lawyer.

5.      After interviewing SSG Yukon Brown, CID agents asked PFC P if she knew SSG Brown well enough to recognize his voice.  She stated that she did and that her attacker was definitely not SSG Brown.

6.      The accused became a suspect, after he made inconsistent statements about when he came on post the day prior; stated that he was wearing stripped ACU's [sic], which was similar to the description by PFC P and make [sic] other suspicious statements[.]

Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000291–92.[2]

On September 27, 2010, Petitioner was charged with one (1) count of attempted

---

[2] Page citations for Respondent's exhibits refer to the Bates Stamp for ease of reference. All other page citations refer to the Case Management/Electronic Case Files ("CM/ECF") page number.

- 2 -

murder, one (1) count of rape, four (4) counts of robbery, two (2) counts of sodomy, four (4) counts of aggravated assault, and one (1) count of kidnapping.  *See* Answer (Doc. 14), Charge Sheet 9/27/2010 (Exh. "50") (Doc. 18).  On December 2, 2010, Lieutenant Colonel Joseph B. Morse recommended that the charges and specifications in the case of Sergeant Threats be tried by a general court-martial.  *See* Answer (Doc. 14), LTC Morse Memo. to CMDR, Ft. Campbell Installation 12/2/2010 (Exh. "45") (Doc. 18).  On May 17, 2011, following the court-martial, Petitioner was found guilty of one (1) specification of rape, one (1) specification of robbery, two (2) specifications of forcible sodomy, one (1) specification of assault with a dangerous weapon, one (1) specification of assault consummated by a battery, and one (1) specification of kidnapping.  Answer (Doc. 14), MAJ GEN McConville Memo. to CMDR 11/5/2011 (Exh. "28") (Doc. 17-7) at 000316; Answer (Doc. 14), Dept. of the Army Rpt. of Result of Trial (Exh. "37") (Doc. 17-9). Petitioner "was sentenced to be reduced to the grade of E1, to forfeit all pay and allowances, to be confined for fifty (50) years and to be dishonorably discharged from the service." Answer (Doc. 14), Exh. "28" at 000316.  Staff Judge Advocate Lieutenant Colonel Morse recommended that the findings and sentence be approved and, except for the dishonorable discharge, ordered executed.  Answer (Doc. 14), LT COL Morse Memo. to CMDR 6/8/2011 (Exh. "34") (Doc. 17-9) at 000388.  Petitioner was also to "be credited with one-hundred seventy-five (175) days confinement against the sentence to confinement."  *Id.*

### B. *Post-Trial Matters*

#### 1. Post-Trial Brief

On September 11, 2011, counsel for Petitioner made post-trial submissions "pursuant to [Rules for Court-Martial (R.C.M.)] 1105 and R.C.M. 1106, and Article 38(c) of the Uniform Code of Military Justice (UCMJ)."  Answer (Doc. 14), CPT Moy, Defense Counsel, Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7).  Petitioner sought disapproval of "the findings and sentence and [an] order [for] a new hearing based on not having effective counsel."  *Id.*, Exh. "29" at 000319.  Alternatively, Petitioner requested a "post-trial Article 39(a) session pursuant to R.C.M. 1102(d) to allow SGT

Threats to argue ineffective assistance of counsel." *Id.*, Exh. "29" at 000319.  Petitioner's ineffective assistance claim included 1) "numerous alleged failures to uncover and research leads"; 2) an alleged "failure to inform SGT Threats of his rights to counsel properly"; and 3) an alleged "failure to uncover that a CID eyewitness stated that SGT Threats was not the attacker." *Id.*, Exh. "29" at 000319.

Regarding defense counsel CPT Vargas's alleged failure to investigate, Petitioner first asserted that CPT Vargas did not believe that CID Agent SA Bullock threatened Petitioner with releasing his family's information to the family of the victim.  *Id.*, Exh. "29" at 000320.  Petitioner further asserted that CPT Vargas did not ask SA Bullock about the alleged threats on the record.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7) at 000320.  Petitioner argued that the alleged threats would have explained why he made statements to CID, and CPT Vargas's assistance was ineffective.  *Id.*, Exh. "29" at 000320.  Second, Petitioner further asserted that the victim "made some inconsistent statements that were not exploited by CPT Vargas." *Id.*, Exh. "29" at 000321.  Petitioner alleges that this failure was ineffective assistance of counsel.  *Id.*, Exh. "29" at 000321.  Third, Petitioner argued that "[t]he DNA evidence is [sic] this case is mostly weak, except for PFC P['s] DNA on a glove allegedly found in SGT Threats storage area." *Id.*, Exh. "29" at 000321.  Petitioner further argued that because there were two gloves found in his storage area, both left handed; one size 11 and one size 10; one with SGT Threats's name written inside, one without; and no identification by the laboratory regarding which glove had the victim's DNA, CPT Vargas was ineffective for not investigating which glove contained the victim's DNA further. Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7) at 000321.  Petitioner reasons that if the DNA was on the unmarked glove, it would exonerate him.  *Id.*, Exh. "29" at 000321.  Fourth, Petitioner asserted that "CPT Vargas failed to get into evidence that SGT Threats received an Army Emergency Relief ("AER") loan of $1000.00 shortly before the incident occurred.  *Id.*, Exh. "29" at 000321.

Petitioner also alleged that "CPT Vargas stated that he believed SGT Threats was

guilty[,] . . . [and] continued that if SGT Threats didn't like it he could fire CPT Vargas but that it would be a waste of money because of the impending trial date and that no attorney could get prepared in time." *Id.*, Exh. "29" at 000321.  Petitioner further alleged that CPT Vargas informed him that he would have to pay for a civilian attorney, and that Petitioner would be unable to get another Trial Defense Service (TDS) counsel at no expense. *Id.*, Exh. "29" at 000321.  Petitioner asserted that CPT Vargas's advice fell below the professional standard of conduct.  Answer (Doc. 14), CPT. Moy Memo. to LT. COL. Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7) at 000321.

Petitioner further asserted that he "was brought in to CID on 23 September primarily because he met a description from SPC Kevin Johnson and was not at the PT formation on the day in question, 22 September 2010." *Id.*, Exh. "29" at 000321.  Petitioner alleged that SPC Johnson "was requested as a government witness and flew back to Fort Campbell, TN[,] [where] [u]pon arriving at Fort Bragg he saw SGT Threats and greeted him in the TDS office." *Id.*, Exh. "29" at 000322.  Petitioner further alleged that "CPT Vargas never spoke to SPC Johnson[,] [and] [h]ad he done so, CPT Vargas would have realized that SPC Johnson would have affirmatively stated that SGT Threats was not the individual he saw around the barracks." *Id.*, Exh. "29" at 000322.

## 2.  Letter from Petitioner

Attached to CPT Moy's memorandum was a letter written by Petitioner to MAJ GEN McConville.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7), Threats Ltr. to MAJ GEN McConville (App'x "A") (Doc. 17-8) at 000330–000340.  Petitioner reiterated many of the claims put forth by CPT Moy on his behalf.  *See id.*, Exh. "29," App'x "A."  Petitioner alleged that CPT Vargas believed that Petitioner was guilty and failed to follow-up on issues Petitioner sought him to investigate. *Id.*, Exh. "29," App'x "A" at 000330–000331.  Petitioner further alleged that CPT Vargas informed Petitioner that he "could fire him & hire another attorney, but I'd be wasting money because of how close the trial was it wouldn't be enough time for a new attorney to get up to date." *Id.*, Exh. "29," App'x "A" at 000331.  Petitioner stated that he had his wife

call the Judge Advocate General's (JAG) office, but she was unable to obtain an appointment for him.  *Id.*, Exh. "29," App'x "A" at 000331.  Petitioner alleged that SA Bullock threatened to give information regarding Petitioner's family to the victim's family.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7), Threats Ltr. to MAJ GEN McConville (App'x "A") (Doc. 17-8) at 000331.  Petitioner further alleged that CPT Vargas did not believe that this had occurred.  *Id.*, Exh. "29," App'x "A" at 000331.  Petitioner also alleged that SPC Johnson made a statement regarding a "black male that fit PFC P['s] vague discription [sic] of her attacker" that SPC Johnson saw "hanging around the unit[.]"  *Id.*, Exh. "29," App'x "A" at 000332.  Petitioner argued that he "met the discription [sic] given by Spc. Johnson exactly."  *Id.*, Exh. "29," App'x "A" at 000332.  Petitioner then alleged that SPC Johnson "was flown out 15 Mar 2011 to back up his statement, he told the prosecuter [sic], only after finding out I was being accused, that I wasn't the person he saw."  *Id.*, Exh. "29," App'x "A" at 000332.  Petitioner asserted that SSG Brown was also a possible suspect, but Petitioner was targeted because of his clothing.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7), Threats Ltr. to MAJ GEN McConville (App'x "A") (Doc. 17-8) at 000332.  Petitioner also alleged that the victim's statement was "full of inconsistencies" and that she "brought up a few things that was [sic] not true[.]"  *Id.*, Exh. "29," App'x "A" at 000332–000333.  Petitioner alleged that he told CPT Vargas that his "interrigation [sic] wasn't a question asking process, it was a finger pointing, you did this process."  *Id.*, Exh. "29," App'x "A" at 000333.  Petitioner also urged that the victim "changed parts of her story to better suit me make the already horrible charges I was facing worse."  *Id.*, Exh. "29," App'x "A" at 000334.  Petitioner challenged the DNA evidence arguing that his DNA was not found in her vaginal swabs and that the "dna found in her panties, the chance of occurrence is 1 of 645 black males."  *Id.*, Exh. "29," App'x "A" at 000335.  Petitioner argued that the DNA evidence found on the gloves was inconsistent with the victim's statement.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7), Threats Ltr. to MAJ GEN McConville (App'x "A")

(Doc. 17-8) at 000336.  Petitioner explained that the money he had in his wallet was due to receipt of a $1000.00 AER loan.  *Id.*, Exh. "29," App'x "A" at 000337.  Petitioner noted that he had told his defense lawyer, CPT Vargas, this information, but CPT Vargas refused to question a witness during trial about Petitioner's receipt of the loan.  *Id.*, Exh. "29," App'x "A" at 000337.  Petitioner asserted that "[d]uring [his] confinement [he] asked Cpt Vargas to look into several things that would prove [he was] innocent."  *Id.*, Exh. "29," App'x "A" at 000337.  Additionally, Petitioner took issue with SA Mannor having drafted the report regarding his interrogation alleging that she had not been present.  *Id.*, Exh. "29," App'x "A" at 000337–000338.  Petitioner admitted that the report was not used at trial.  Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. "29") (Doc. 17-7), Threats Ltr. to MAJ GEN McConville (App'x "A") (Doc. 17-8) at 000337–000338.  Petitioner also alleged that SA Joubert was not truthful regarding questioning Petitioner about his dominant hand.  *Id.*, Exh. "29," App'x "A" at 000338.  Based on these allegations, Petitioner sought a retrial.  *Id.*, Exh. "29," App'x "A" at 000338.

### 3.  Post-Trial Supplement

On October 5, 2011, a post-trial hearing under Article 39(a) was recommended, so the military judge could "determine the legal sufficiency of the adjudged findings and sentence."  Answer (Doc. 14), LTC Edwards Memo. to CMDR, 101st Airborne Division (Air Assault) and Ft. Campbell 10/5/2011 (Exh. "28") at 000317.  On December 12, 2011, defense counsel submitted new information alleging that Petitioner's prior defense counsel, CPT Vargas did not investigate SSG Brown as the perpetrator and therefore provided ineffective assistance.  Answer (Doc. 14), CPT Moy Memo. to LTC Bovarnick 12/12/2011 (Exh. "27").

### 4.  Post-Trial Findings of Fact & Conclusions of Law

On December 21, 2011, Colonel Grammel issued his Findings of Fact & Conclusions of Law from Post-Trial Hearing.  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6).  The court found that "CID agents asked PFC P if she knew SSG Brown well enough to recognize his voice[,]

[and] [s]he stated that she did and that her attacker was definitely not SSG Brown." *Id.*, Exh. "26" at 000292.  The court noted that "[t]he accused became a suspect, after he made inconsistent statements about when he came on post the day prior; stated that he was wearing stripped ACU's, which was similar to the description by PFC P and make [sic] other suspicious statements[.]" *Id.*, Exh. "26" at 000292.  The court further found that "Special Agent Bullock never threatened the accused[,] . . . [and] [a]t the post-trial hearing, the testimony of SA Bullock was more credible than the testimony of the accused." *Id.*, Exh. "26" at 000292.  The court also found that CPT Vargas fully advised Petitioner of his rights to counsel and corresponded regularly with him.  *Id.*, Exh. "26" at 000293.  The court noted that "CID agents confirmed with Army Community Services that the accused had received an Army Emergency Relief loan in the amount of $1,000.00 in September 2010." Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000293.  The court found that CPT Vargas listened to information provided by Petitioner, "used some of the information, and followed certain leads[,] [but] [a]fter consideration, the defense counsel decided to not pursue some of the leads, because they were not helpful to the case." *Id.*, Exh. "26" at 000294.  CPT Vargas considered and rejected follow-up regarding the victim's statement that Petitioner was her squad leader, although he was not; the difference between the ammunition described by the victim and that found in Petitioner's quarters; SPC Johnson's observations; SSG Brown as a person of interest; and the AER loan to Petitioner.  *Id.*, Exh. "26" at 000294.  The court found that "[t]he accused never told CPT Vargas about which hand the gloves were for or whether CID asked the accused about his dominant hand." *Id.*, Exh. "26" at 000294.

The court noted that at Petitioner's arraignment, "the military judge advised the accused of his rights to counsel[,] [t]he accused stated that he understood and had no questions[,] . . . [and] he wanted to be represented by CPT Vargas alone." *Id.*, Exh. "26" at 000294.  The court further noted that CPT Vargas requested appointment of a DNA expert and a forensic psychologist, and both requests were granted.  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at

000294–000295.  The court also acknowledged that CPT Vargas filed a motion to suppress Petitioner's statements based on the length and manner of the interrogation.  *Id.*, Exh. "26" at 000294.  The court held "that the government satisfied its burden of prove [sic] by a preponderance of the evidence that [Petitioner's] statements were voluntary, and the motion [to suppress] was denied."  *Id.*, Exh. "26" at 000295.

The court recognized "CPT Vargas's trial strategy was to focus on what he assessed to be the two main parts of the prosecution's case against the accused – the statements to CID and the DNA evidence."  *Id.*, Exh. "26" at 000295.  CPT Vargas requested and was granted additional funding for the defense's DNA expert.  *Id.*, Exh. "26" at 000296.  CPT Vargas also requested assistance from his senior defense counsel, MAJ Kranz, due to the complexity of the case.  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000296.  The court noted that this request was granted and MAJ Kranz "assessed the case and discussed trial strategy with CPT Vargas." *Id.*, Exh. "26" at 000296.  "Major Kranz detailed himself as the assistant defense counsel so that he would be available to assist CPT Vargas."  *Id.*, Exh. "26" at 000296.  The court observed that "[t]he issue of a new defense counsel from TDS was never brought up before post-trial[;] [t]he accused never said that he wanted one or said that he was displeased with CPT Vargas[;] [and] [t]he accused never said that he no longer wanted CPT Vargas to be his attorney . . . before or during the trial."  *Id.*, Exh. "26" at 000296.  The court further observed that at an Article 39(a) session prior to trial, Petitioner confirmed to the military judge that he wished to be represented by CPT Vargas and MAJ Kranz.  *Id.*, Exh. "26" at 000296.  The court found that during trial, defense counsel cross-examined the victim regarding her inability to identify her assailant despite speaking with Petitioner daily prior to the attack; whether she told agents about starting to see spots; that she brought up her fiancé first; and that she did not have any bruising or other injuries to her neck.  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000297.  The court further found that defense counsel relitigated the voluntariness of Petitioner's statements when cross-examining SA Manor, SA Bullock, SA Yeatts, SA

1    Joubert, and SA Wallace.  *Id.*, Exh. "26" at 000297.  The court also found that "[w]hen

2    cross-examining Ms. Lyons, one of the defense counsel's topics was possible alternate

3    causes of the petechiae found on PFC P[.]"  *Id.*, Exh. "26" at 000297.  The court noted that

4    CPT Vargas's cross-examination of the DNA examiner, Ms. Courtney Tourre, "included

5    the limited significance of the statistical findings for the DNA on the panties and the DNA

6    on the car seat fabric swatch, as well as the absence of evidence of DNA in other locations

7    where it might have been expected."  *Id.*, Exh. "26" at 000297.

8        The court "applied the three-pronged test from United States v. Polk, 32 M.J. 150,

9    153 (C.M.A. 1991)."  Answer (Doc. 14), Findings of Fact & Conclusions of Law from

10   Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000298.  The court delineated the *Polk* test

11   noting that "[t]he first prong asks whether the allegations are true, and if they are, whether

12   there is a reasonable explanation for counsel's action in the defense of the case."  *Id.*, Exh.

13   "26" at 000298.  The court found "[t]he first allegation . . . that CPT Vargas misadvised

14   the accused about the accused's rights to counsel . . . [wa]s not true."  *Id.*, Exh. "26" at

15   000298.  The court found "[t]he second allegation . . . that CPT Vargas failed to explore

16   on the record an additional possibility that the accused's statements were involuntary

17   because SA Bullock threatened to release personal information about SGT Threats' family

18   to the family of PFC P . . . [wa]s true."  *Id.*, Exh. "26" at 000298.  The court reviewed CPT

19   Vargas's explanation for not exploring that possibility on the record and found it

20   reasonable.  *Id.*, Exh. "26" at 000298.  The court found "[t]he third allegation was that CPT

21   Vargas failed to exploit certain parts of PFC P['s] testimony, specifically her description

22   of the ammunition she saw[] versus the ammunition found in the accused quarters and her

23   testimony about the attacker's belief that she had a son."  *Id.*, at Exh. "26" at 000299.  The

24   court reviewed CPT Vargas's decision-making regarding the ammunition, as well as the

25   victim's testimony regarding the attacker's belief that she had a son, as well as her

26   testimony regarding her duty relationship with Petitioner.  Answer (Doc. 14), Findings of

27   Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000299.  The

28   court found CPT Vargas's explanations reasonable and his cross-examinations focused and

effective.  *Id.*, Exh. "26" at 000299.  The court described Petitioner's fourth allegation regarding CPT Vargas's alleged failure to "draw attention to the fact that one of the two left-handed gloves was one size 11 with the accused's name written on it and one was size 10 without writing on it."  *Id.*, Exh. "26" at 000299.  The court found this allegation to be true, but that Petitioner's failure to mention this to CPT Vargas before trial, as well as the "little difference between size 10 and size 11 gloves, [that] people do not write on all their gloves, and [that] both gloves were found in the accused's storage shed[,]" were reasonable explanations as to why defense counsel did not inquire further.  *Id.*, Exh. "26" at 000299.  The court further observed that "there facts [we]re insignificant and would have no impact[.]"  *Id.*, Exh. "26" at 000299.  The court described the fifth allegation as CPT Vargas "not successfully introduc[ing] evidence showing that the accused received an Army Emergency Relief loan."  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000299.  The court determined this allegation to be true, and that CPT Vargas provided "no reasonable explanation for . . . not checking into the details of such a loan."  *Id.*, Exh. "26" at 000299.  The court found "[t]he sixth allegation . . . that CPT Vargas did not speak with or present the testimony of SPC Johnson . . . [wa]s true."  *Id.*, Exh. "26" at 000300.  The court noted that "Specialist Johnson observed an unknown black male walking back and forth during physical training hours for the two weeks prior to 22 September 2010[;] [h]owever, SPC Johnson did not observe the person with PFC P on 22 September 2010."  *Id.*, Exh. "26" at 000300.  The court further noted that "Specialist Johnson's description of the person's clothing differed from the description by PFC P[,]" and SPC Johnson's description did not result in Petitioner being asked to go to CID.  *Id.*, Exh. "26" at 000300.  The court accepted that "Captain Vargas read SPC Johnson's statement and decided it was not relevant."  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000300.  The court further noted that "[t]here was also an allegation that CPT Vargas did not pursue whether or not the accused was PFC P['s] actual squad leader[,] . . . which [wa]s true."  *Id.*, Exh. "26" at 000300.  The court found CPT Vargas's assertion that this fact was

not relevant incorrect, but agreed with his statement that it would not exonerate Petitioner. *Id.*, Exh. "26" at 000300. The court observed that if the victim's assailant had been her squad leader, she would have been expected to recognize him. *Id.*, Exh. "26" at 000300. The court further observed that "[t]his weakness in the government's case was obvious to the finder of fact, and the defense counsel exploited this fact during cross-examination of PFC P[.]" *Id.*, Exh. "26" at 000300. The court found CPT Vargas's explanation reasonable. Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000300. "Lastly, there was an allegation that CPT Vargas did not interview SSG Brown[,] . . . [which the court found] [wa]s true." *Id.*, Exh. "26" at 000300. The court found that although "Staff Sergeant Brown was initially a person of interest[,] . . . investigated by CID[,] Private First Class P kn[ew] SSG Brown, and . . . said that [her attacker] was definitely not SSG Brown." *Id.*, Exh. "26" at 000300. The court further found that "[t]here was nothing that would indicate to a defense counsel that an interview with SSG Brown would be anything but futile[,]" and therefore CPT Vargas's explanation was reasonable. *Id.*, Exh. "26" at 000300.

The court described the second prong of *Polk* to require "if the allegations are true, [the court must assess] whether the accused has proven that the defense counsel's 'level of advocacy fell measurably below' an objective standard of reasonableness." *Id.*, Exh. "26" at 000300. "The only allegation that was true, without a reasonable explanation, and survives to the second prong[,] was the failure to further investigate the AER loan." Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000300. The court considered any deficiencies "in context of the defense counsel's performance throughout the whole case." *Id.*, Exh. "26" at 000301. After review of defense counsel's performance, the court found that "[t]he errors were no[t] so serious as to deprive the accused of a fair trial whose result is reliable." *Id.*, Exh. "26" at 000301. The court further found that "[c]onsidering the advocacy of the defense counsel throughout the entire case, it did not fall significantly below what we ordinarily expect from fallible lawyers." *Id.*, Exh. "26" at 000301. The court observed that "[e]ven if the

accused had proven the second prong, the accused failed to prove the third prong[,] . . . [and] [t]here were no errors that were so serious as to deprive the accused of a fair trial." *Id.*, Exh. "26" at 000301.

The court also considered whether "the Specification of Charge VI [f]ail[ed] to [s]tate an [o]ffense."  Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000301.  The court observed that "[t]he accused never challenged the sufficiency of the Specification of Charge VI during the post-trial phase, until the court raised the issue and requested briefs on it."  *Id.*, Exh. "26" at 000302. The court concluded that "[t]he Specification of Charge VI, when liberally construed, states the offense of kidnapping."  *Id.*, Exh. "26" at 000303.  The court further noted that the "factual allegations along with the record of trial sufficiently protect the accused against double jeopardy."  *Id.*, Exh. "26" at 000303.

On January 3, 2012, Petitioner petitioned for clemency seeking a reduction in his time of confinement.  *See* Answer (Doc. 14), LT Moy Memo. to LTC Bovarnick 1/3/2012 (Exh. "25").  On January 4, 2012, LTC Bovarnick adopted the June 8, 2011 advice and recommendations by his predecessor, found Petitioner's ineffective assistance of counsel allegations to be without merit, and recommended approval of "the findings and sentence and, except for that part of the sentence extending to a dishonorable discharge, order it executed."  Answer (Doc. 14), LTC Bovarnick Memo. to CMDR, 101st Airborne Division (Air Assault) and Fort Campbell 1/4/2012 (Exh. "24").  On January 4, 2012, Major General McConville approved and executed Petitioner's sentence, "except for that part of the sentence extending to a dishonorable discharge[.]"  Answer (Doc. 14), Action 1/4/2012 (Exh. "23"); *see also* Answer (Doc. 14), Gen. Court-Martial Order No. 1 1/4/2012 (Exh. "22") at 000181.

    *C.*    **Appellate Review**

        **1.**  **United States Army Court of Criminal Appeals**

            **a.**  **Initial appeal**

On February 8, 2012, the record of trial was referred to the United States Army

Court of Criminal Appeals ("ACCA") for appellate review and counsel appointed.  Answer (Doc. 14), Referral and Designation of Counsel 2/8/2012 (Exh. "21").  On January 3, 2013, after multiple extensions of time, Petitioner filed his appellate brief.  *See* Answer (Doc. 14), Br. on Behalf of Appellant (Exh. "16") (Doc. 17); *see also* Answer (Doc. 14) Mot. for Ext. of Time (Exhs. "17," "18," & "19") (Doc. 17-1).  Counsel asserted that "[t]he government did not provide appellant with the required notice of the terminal element of Article 134, UCMJ, which was the basis for the Charge VI and its Specification."  Answer (Doc. 14), Exh. "16" at 000136.  As such, counsel sought Petitioner's kidnapping conviction to be set aside.  *Id.*, Exh. "16" at 000139.  Counsel also argued that in light of this alleged error, a sentence rehearing was required.  *Id.*, Exh. "16" at 000139–000140.  Petitioner's counsel also directed the appellate court to issues raised in Petitioner's *Grostefon*[3] brief attached as an appendix.  Answer (Doc. 14), Br. on Behalf of Appellant (Exh. "16"), App'x "A."  Petitioner asserted four (4) grounds for relief, including 1) his sentence was "extreme and overly harsh"; 2) ineffective assistance of trial counsel; 3) the involuntary nature of his statements; and 4) insufficiency of the evidence.  *See Id.*, Exh. "16," App'x "A."  Petitioner's ineffective assistance of counsel claim encompassed counsel's alleged failure to a) properly advise Petitioner regarding his right to counsel; b) "investigate or raise the issue that appellant's family was threatened by CID investigators"; c) "investigate or present any evidence that appellant had received an AER loan just prior to the alleged offenses"; d) "investigate or present evidence about SSG Yukon Brown at trial"; e) "investigate or present evidence regarding SPC Johnson seeing an individual lurking around the unit location prior to the alleged offenses"; and f) "file a motion to suppress the search and seizure of appellant as a suspect in this case."  *Id.*, Exh. "16,"

---

[3] *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).  The Court of Military Appeals held that it "will require that when the accused specifies error in his request for appellate representation or in some other form, the appellate defense counsel will, at a minimum, invite the attention of the Court of Military Review to those issues and, in its decision, the Court of Military Review will, at a minimum, acknowledge that it has considered those issues enumerated by the accused and its disposition of them."  *Grostefon*, 12 M.J. at 436.

App'x "A" at 000143–000146.   Regarding the sufficiency of the evidence, Petitioner highlighted that a) "[t]here was another soldier in the unit who fit the profile and unique characteristics detailed by PFC KP"; b) "[o]nly one glove seized from appellant's house tested positive for PFC KP's DNA[,] . . . which was inconsistent with PFC KP's testimony"; c) "Specialist Johnson saw an individual fitting the [sic] PFC KP's description lurking around the unit area during PT hours during the weeks prior to the alleged offenses"; and d) "[t]he profiles and ratios for the DNA attributed to appellant and found in PFC KP's car and underwear [we]re not overwhelming." *Id.*, Exh. "16," App'x "A" at 000147–000148.   Based on these alleged failures and deficiencies, Petitioner sought the court to set aside his findings of guilt and sentence. *Id.*, Exh. "16," App'x "A" at 000146, 000148.

On July 31, 2013, the Government filed its response.   Answer (Doc. 14), Br. on Behalf of Appellee (Exh. "13") (Doc. 17).   On August 1, 2013, Petitioner formally moved for the admission of additional *Grostefon* material.   Answer (Doc. 14), Mot. to Attach Additional Grostefon Matters (Exh. "12") (Doc. 16).   Petitioner asserted that 1) he did not receive effective assistance of counsel because counsel allegedly "failed to move for a change of venue"; and 2) the appellate court should consider additional material, including, "[p]ersonal matters typed by appellant[,]" excerpts from Petitioner's letter to his individual military counsel, Second Platoon, Headquarters Service Company's ("HSC") alert roster, and Petitioner's Sprint telephone call log.   Answer (Doc. 14), Exh. "12," App'x "C" at 000079.   Petitioner further urged that his phone records "establish that appellant had contact with a member of his unit and learned of the attacks on PFC KP from his leadership[,] . . . [which] explains why appellant mentioned PFC KP in his initial interview with CID before the agent mentioned PFC KP." *Id.*, Exh. "12," App'x "C" at 000080.   On August 6, 2013, Petitioner replied and asserted that the Government's arguments were speculative, further urging that the Government "failed to allege a terminal element in the Specification of Charge VI and there is no mention in the record prior to closing argument of the terminal elements." Answer (Doc. 14), Reply Br. on Behalf of Appellant (Exh. "11")

1    (Doc. 16) at 000062, 000064.

2          On September 4, 2013, the United States Army Court of Criminal Appeals issued a

3    Summary Disposition of Petitioner's appeal.  *See* Answer (Doc. 14), Summ. Disposition

4    (Exh. "10") (Doc. 16).  The appellate court held that "the Specification of Charge VI d[id]

5    not allege the Article 134, UCMJ, terminal element of conduct that is prejudicial to good

6    order and discipline (Clause 1) or of a nature to bring discredit upon the armed forces

7    (Clause 2)."  *Id.*, Exh. "10" at 000058.  As such, the ACCA found that appellant was not

8    given "sufficient notice of the missing terminal element required to prove the kidnapping

9    offense" and set aside the findings of guilty to Charge VI and its Specification.  *Id.*, Exh.

10   "10" at 000058.  The appellate court next considered whether reassessment of Petitioner's

11   sentence was appropriate.  *Id.*, Exh. "10" at 000059.  The court "initially note[d] the

12   evidence underlying the kidnapping charge was proper aggravation evidence which would

13   have been available to the military judge regardless of it appearing on the charge sheet."

14   *Id.*, Exh. "10" at 000059.  Upon further consideration, the appellate court found "beyond a

15   reasonable doubt that appellant would have received a sentence on the remaining

16   convictions of no less than that approved by the convening authority."  *Id.*, Exh. "10" at

17   000059.  Accordingly, the ACCA set aside the findings of guilty to Charge VI and its

18   Specification, affirmed the remaining findings of guilty, and affirmed Petitioner's

19   sentence.  Answer (Doc. 14), Summ. Disposition (Exh. "10") (Doc. 16) at 000059.  The

20   appellate court also held that the matters personally raised by Petitioner pursuant to

21   *Grostefon* were without merit.  *Id.*, Exh. "10" at 000057.

22                                **b.  Reconsideration**

23         On October 3, 2013, Petitioner filed a motion for reconsideration and to file

24   additional *Grostefon* matters.  *See* Answer (Doc. 14), Mot. Reconsideration and Mot. for

25   Leave to File Add'l Grostefon Matters Out of Time (Exh. "9") (Doc. 15).  Petitioner sought

26   reconsideration of the ACCA's "decision affirming the remaining findings of guilty and

27   the sentence[.]"  *Id.*, Exh. "9" at 000043.  Petitioner also sought to raise an additional

28   *Grostefon* matter alleging ineffective assistance of trial counsel resulted in Petitioner not

testifying during the suppression hearing.  *See id.*, Exh. "9," App'x "A."  Petitioner urged

that if he had been allowed to testify, he could have testified that SA Bullock threatened

his family's privacy, and that when Petitioner arrived at CID, he "was wearing the same

civilian clothing Spc. Johnson described in his statement" but not matching the victim's

description.  *Id.*, Exh. "9," App'x "A" at 000046–000047.  Petitioner also urged that CPT

Vargas allegedly refused to question "the agents further as to why there [wa]s no

documentation of the interrogation."  *Id.*, Exh. "9," App'x "A" at 000047.  Petitioner

asserted that his "testimony along with the agent's inconsistencies, contradictions and lack

of documentation would have been vital to the courts [sic] decision."  Answer (Doc. 14),

Mot. Reconsideration and Mot. for Leave to File Add'l Grostefon Matters Out of Time

(Exh. "9") (Doc. 15), App'x "A" at 000047.  Petitioner further asserted that "[t]he DNA

used in [his] conviction [wa]s ineffective and no justice system would have acknowledged

the findings especially when the prosecution's expert concluded the profiles found appear

so frequently, they could belong to any unknown, unrelated male."  *Id.*, Exh. "9," App'x

"A" at 000048.  Petitioner also asserted that CPT Vargas should have argued a suggestive

line up and attacked the victim's statements.  *Id.*, Exh. "9," App'x "A" at 000048–000049.

Finally, Petitioner again pointed to SPC Johnson's statement that Petitioner was not the

individual SPC Johnson described to CID.  *Id.*, Exh. "9," App'x "A" at 000048–000049.

On October 17, 2013, the United States Army Court of Criminal Appeals issued its

Summary Disposition on Reconsideration.  Answer (Doc. 14), ACCA Summ. Disp. on

Recon. 10/17/2013 (Exh. "8") (Doc. 15).  The ACCA held that "Appellant's request for

reconsideration is granted and we have now considered appellant's additional *Grostefon*

matters in our reconsideration of this case[,] . . . [and] find these matters to be without

merit.  *Id.*, Exh. "8" at 000041.  As such, the court "again set aside Charge VI and its

Specification and AFFIRM[ED] the remaining findings of guilty . . . [and] the approved

sentence."  *Id.*, Exh. "8" at 000041.

### 2.  United States Court of Appeals for the Armed Forces

On December 16, 2013, counsel for Petitioner petitioned the United States Court of

Appeals for the Armed Forces ("CAAF") for review.  Answer (Doc. 14), Pet. for Grant of Review (Exh. "7") (Doc. 15).   On January 3, 2014, counsel for Petitioner filed a Supplement to Petition for Grant of Review.  Answer (Doc. 14), Suppl. to Pet. for Grant of Review (Exh. "3") (Doc. 15).   In the supplement, counsel stated they had "carefully examined the record of trial in the case, do not admit that the findings and the sentence are correct in law and fact, and submit the case upon its merits to [the CAAF]."  *Id.*, Exh. "3" at 000006.  Additionally, Petitioner submitted a *Grostefon* brief.  *See id.*, Exh. "3," App'x "A" at 000010–000024.  Petitioner reiterated that he had been denied effective assistance of trial counsel resulted in Petitioner not testifying during the suppression hearing.  *Id.*, Exh. "3," App'x "A" at 000010.  Petitioner reviewed how his testimony may have changed the outcome of his case including alleging that 1) "SA Bullock threatened to jeopardize [his] family's privacy"; 2) Petitioner was singled out because upon arriving at CID, he "was wearing the same civilian clothing Spc. Johnson described in his statement prepared an hour prior to [Petitioner's] arrival at CID[,]" but which did not match the victim's description of the attacker's clothing; and 3) trial counsel failed to inquire regarding the lack of documentation from Petitioner's interrogation.  *Id.*, Exh. "3," App'x "A" at 000010–000011, 000014–000021.  Petitioner also reiterated that "[t]he DNA used in [his] conviction [wa]s ineffective and no justice system would have acknowledged the findings especially when the prosecution's expert concluded the profiles found appear so frequently, they could belong to any unknown, unrelated male."  Answer (Doc. 14), Suppl. to Pet. for Grant of Review (Exh. "3") (Doc. 15), App'x "A" at 000011.  Petitioner questioned the victim's statements and highlighted Spc. Johnson's additional statement that "the unknown African American male he described was not [Petitioner]."  *Id.*, Exh. "3," App'x "A" at 000012–000013.   Petitioner also alleged that his "Sixth Amendment Rights were violated[,] [because] [d]uring the Post Trial hearing [he] was not afforded the right to confront KP or Spc. Johnson."  *Id.*, Exh. "3," App'x "A" at 000013.  Petitioner further asserted that trial counsel was ineffective because counsel allegedly 1) failed to question Spc. Johnson; 2) failed to investigate a person of interest; 3) failed to look into Petitioner's

AER loan; 4) failed to question CID agents regarding threatening Petitioner, their lack of documentation, and conflicting testimonies; 5) failed to attack the victim's statements; 6) told Petitioner that he thought Petitioner was guilty; 7) did not sufficiently follow-up regarding the issues counsel raised. *Id.*, Exh. "3," App'x "A" at 000021–000023.

On January 10, 2014, the Government opposed the petition for review, relying on its brief before the ACCA. Answer (Doc. 14), Mem. for Clerk of Ct., CAAF 1/10/2014 (Exh. "2") (Doc. 15). On April 22, 2014, the CAAF issued its order denying the petition for review. Answer (Doc. 14), CAAF Order Denying Pet. (Exh. "1") (Doc. 15).

### D.      The Instant Habeas Proceeding

On November 6, 2017, Petitioner filed his Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1). Petitioner asserts one (1) ground for relief. *See* Petition (Doc. 1). Petitioner alleges "actual and factual innocence of a statutorily ineligible sentence." *Id.* at 4. In support of this claim, Petitioner asserts that "the DNA report states a match to 1 in 6 percentile, of a match to 1 in 14 percentile[,] . . . mean[ing] the DNA match was so degraded it would match 1 in 6 people to 1 in 14 people tested, proving out Petitioner's actual and factual innocence of the aforementioned charges." *Id.* Petitioner further asserts that "Specialist Kevin Johnson who was specifically flown in to testify by the Prosecution, was told not to testify when it became known that said Kevin Johnson stated it was not Petitioner that he saw prior to aforementioned crimes were done to Private First Class KP." *Id.* Petitioner also argues that his $1,000.00 Army Emergency Relief ("AER") loan was verified by CID on September 28, 2010, but at the Article 32 Hearing on October 19, 2010, CID denied verifying the loan. *Id.* Finally, Petitioner urges that the victim's description of her attacker did not match him. *Id.*

On April 30, 2018, Respondent filed his Answer (Doc. 14) and on June 13, 2018, Petitioner replied (Doc. 23).

. . .

. . .

. . .

1    **II.    STANDARD OF REVIEW**

2         **A.    *In General***

3         "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody

4    in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. §

5    2241(c).  "The military justice system is independent of the federal court system, with its

6    own source in the constitution, its own rules of procedure and its own doctrines of

7    substantive law."  *Davis v. Marsh*, 876 F.2d 1446, 1447 (9th Cir. 1989).  "The statute which

8    vests federal courts with jurisdiction over applications for habeas corpus from persons

9    confined by the military courts is the same statute which vests them with jurisdiction over

10   the applications of persons confined by the civil courts[,] [b]ut in military habeas corpus

11   the inquiry, the scope of matters open for review, has always been more narrow than in

12   civil cases."  *Burns v. Wilson*, 346 U.S. 137, 139, 73 S. Ct. 1045, 1047, 97 L. Ed. 1508

13   (1953) (citations omitted).  "Military law, like state law, is a jurisprudence which exists

14   separate and apart from the law which governs in our federal judicial establishment."  *Id.*

15   at 140, 73 S. Ct. at 1047.  Thus, "[w]hen individuals punished by courts-martial seek

16   redress in the federal courts, the military justice system is thus often analogized to state

17   court systems."  *Davis*, 876 F.2d at 1447 (citing *Noyd v. Bond*, 395 U.S. 683, 693–94, 89

18   S. Ct. 1876, 1882–83, 23 L. Ed.2d 631 (1969); *Gusik v. Schilder*, 340 U.S. 128, 131–32,

19   71 S. Ct. 149, 151–52, 95 L. Ed. 146 (1950)).  Moreover, because "the rights of men in the

20   armed forces must perforce be conditioned to meet certain overriding demands of

21   discipline and duty, and the civil courts are not the agencies which must determine the

22   precise balance to be struck in this adjustment[,] . . . Congress has taken great care both to

23   define the rights of those subject to military law, and provide a complete system of review

24   within the military system to secure those rights."  *Burns*, 346 U.S. at 140, 73 S. Ct. at

25   1048.

26        "In military habeas corpus cases, even more than in state habeas corpus cases, it

27   would be in disregard of the statutory scheme if the federal civil courts failed to take

28   account of the prior proceedings—of the fair determinations of the military tribunals after

all military remedies have been exhausted." *Burns*, 346 U.S. at 142, 73 S. Ct. at 1048–49. As such, "when a military decision has dealt fully and fairly with an allegation raised in that application, it is not open to a federal civil court to grant the writ simply to re-evaluate the evidence." *Burns*, 346 U.S. at 142, 73 S. Ct. at 1049 (citing *Whelchel v. McDonald*, 340 U.S. 122, 71 S. Ct. 146, 95 L. Ed. 141 (1950)); *see also Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003); *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 810, 811 (10th Cir. 1993). "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of [Petitioner's] claims." *Burns*, 346 U.S. at 144, 73 S. Ct. at 1050 (citations omitted).

### B.    Exhaustion and Waiver

"Military prisoners must exhaust military remedies before seeking relief in federal court." *Davis v. Marsh*, 876 F.2d 1446, 1449 (9th Cir. 1989) (citing *Gusik v. Schilder*, 340 U.S. 128, 131–32, 71 S. Ct. 149, 151–52, 95 L. Ed. 146 (1950)). "The doctrine of waiver rests on many of the same considerations underlying the doctrines of exhaustion and abstention, including the respect due a parallel and independent system of justice, the desirability of resolving claims without the need for duplicative litigation, and the benefits of having constitutional decisions made in the first instance by a judge with the opportunity to view counsel, witnesses and jury." *Id.* (citations omitted). "To obtain federal habeas review of claims based on trial errors to which no objection was made at trial, or of claims that were not raised on appeal, a state prisoner must show both cause excusing the procedural default and actual prejudice resulting from the error." *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 812 (10th Cir. 1993) (citing *Murray v. Carrier*, 477 U.S. 478, 491, 106 S. Ct. 2639, 2647, 91 L. Ed. 2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506–07, 53 L. Ed. 2d 594 (1977)). The Ninth Circuit Court of Appeals has recognized that "[t]he *Sykes* cause-and-prejudice exception guarantees that the waiver rule 'will not prevent a federal habeas court from adjudicating for the first time the federal constitutional claim of a defendant who in the absence of such an adjudications will be the victim of a miscarriage of justice.'" *Davis*, 876 F.2d at 1450

(citing *Sykes*, 433 U.S. at 91, 97 S. Ct. at 2508)).  The *Davis* court thus held that "[w]hile the analogy between the military justice system and a state court system is not perfect, the two are sufficiently congruent to justify adopting an identical waiver rule."  *Davis*, 876 F.2d at 1450.

"[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986); *see also Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996) (petitioner failed to offer any cause "for procedurally defaulting his claims of ineffective assistance of counsel, [as such] there is no basis on which to address the merits of his claims.").  In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Murray*, 477 U.S. at 494, 106 S. Ct. at 2648 (emphasis in original) (internal quotations omitted).  Without a showing of both cause and prejudice, a habeas petitioner cannot overcome a waiver and gain review by the federal courts.  *Id.*, 106 S. Ct. at 2649.

The Supreme Court has recognized, however, that "the cause and prejudice standard will be met in those cases where review of a state prisoner's claim is necessary to correct 'a fundamental miscarriage of justice.'"  *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 135, 102 S. Ct. 1558, 1572–73, 71 L. Ed. 2d 783 (1982)).  "The fundamental miscarriage of justice exception is available 'only where the prisoner *supplements* his constitutional claim with a colorable showing of factual innocence.'"  *Herrara v. Collins*, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993) (emphasis in original) (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S. Ct. 2616, 2627, 91 L. Ed. 2d 364 (1986)).  Thus, "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the

merits." *Herrara*, 506 U.S. at 404, 113 S. Ct. at 862; *see also Schlup v. Delo*, 513 U.S. 298, 315, 115 S. Ct. 851, 861, 130 L Ed. 2d 808 (1995).  Petitioner must establish new facts that "raise[] sufficient doubt about [his] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error." *Schlup*, 513 U.S. at 317, 115 S. Ct. at 862; *see also Narula v. Yakubisin*, 650 Fed. App'x 337 (9th Cir. 2016).

## III.    ANALYSIS

Petitioner's sole claim for relief is that he is "actually and factually innocent" of the charges against him.  Petition (Doc. 1) at 4.  As discussed in Section II, *supra*, habeas relief is available only to those alleging a constitutional violation.  "'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrara*, 506 U.S. at 404, 113 S. Ct. at 862; *see also Schlup v. Delo*, 513 U.S. 298, 315, 115 S. Ct. 851, 861, 130 L Ed. 2d 808 (1995).  Petitioner has not explicitly alleged any constitutional violation in his Petition (Doc. 1) and has failed to establish new facts that "raise[] sufficient doubt about [his] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error." *Schlup*, 513 U.S. at 317, 115 S. Ct. at 862; *see also Narula v. Yakubisin*, 650 Fed. App'x 337 (9th Cir. 2016).  As such, Petitioner's Petition (Doc. 1) should be dismissed.  The Court will, however, give Petitioner's claims their broadest construction and address each supporting argument in turn.

### A.    *DNA Evidence*

Petitioner asserts that "the DNA report states a match to 1 in 6 percentile, of a match to 1 in 14 percentile[,] . . . mean[ing] the DNA match was so degraded it would match 1 in 6 people to 1 in 14 people tested, proving out Petitioner's actual and factual innocence of the aforementioned charges."  Petition (Doc. 1) at 4.  Petition did not raise this specific issue before the military courts, and as such it was waived.

Petitioner cannot show cause and prejudice to overcome this waiver. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986). In addition to cause, a habeas petitioner must show actual prejudice, meaning that he "must show not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494, 106 S. Ct. at 2648 (emphasis in original) (internal quotations omitted). Without a showing of both cause and prejudice, a habeas petitioner cannot overcome the procedural default and gain review by the federal courts. *Id.* at 494, 106 S. Ct. at 2649. Here, Petitioner has not shown cause and cannot overcome the procedural default and gain review here. *See Murray*, 477 U.S. at 494, 106 S. Ct. at 2649. As noted above, neither has Petitioner demonstrated a fundamental miscarriage of justice. The record before this Court is devoid of evidence supporting a showing of factual innocence. As such, the Court finds that Petitioner's claims are procedurally barred and he is not entitled to habeas review.

To the extent that Petitioner's claim regarding DNA can be construed as encompassed by one of the many arguments regarding the DNA evidence raised in one of his many *Grostefon* briefs to the military courts, it was fully and fairly considered even where summarily denied. *Armann v. McKean*, 549 F.3d 279, 292–93 (3d Cir. 2008); *Roberts v. Callahan*, 321 F.3d 994, 997 (10th Cir. 2003); *see also Tillery v. Shartle*, 2017 WL 4337343 at *4 (D. Ariz. September 29, 2017).

### B.    SPC Kevin Johnson

Petitioner asserts that "Specialist Kevin Johnson who was specifically flown in to testify by the Prosecution, was told not to testify when it became known that said Kevin Johnson stated it was not Petitioner that he saw prior to aforementioned crimes were done to Private First Class KP." Petition (Doc. 1) at 4. Petitioner raised this issue to the trial court during post-trial proceedings. Answer (Doc. 14), CPT Moy Memo. to LT COL

Bovarnick 9/11/2011 (Exh. 29) (Doc. 17-7), Threats Ltr. to MAJ Gen McConville (App'x "A") (Doc. 17-8) at 000332. The trial court addressed the issue in its Findings of Fact & Conclusions of Law. Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000300. Petitioner also raised this issue within a claim for ineffective assistance of counsel and insufficiency of the evidence to the ACCA. Answer (Doc. 14), Br. on Behalf of Appellant (Exh. "16") (Doc. 17), App'x "A" at 000143–000148. The ACCA found Petitioner's claims were without merit. Answer (Doc. 14), Summ. Disposition (Exh. "10") (Doc. 16) at 000057. Petitioner again raised the issue on reconsideration, and the ACCA summarily disposed of it. Answer (Doc. 14), Mot. Reconsideration and Mot. for Leave to File Add'l Grostefon Matters Out of Time (Exh. "9") (Doc. 15), App'x "A" at 000048–000049; Answer (Doc. 14), ACCA Summ. Disp. on Recon. 10/17/2013 (Exh. "8") (Doc. 15). Finally, Petitioner raised the issue to the CAAF in his *Grostefon* brief, which was summarily denied. Answer (Doc. 14), Suppl. to Pet. for Grant of Review (Exh. "3") (Doc. 15), App'x "A" at 000012–000013; Answer (Doc. 14), CAAF Order Denying Pet. (Exh. "1") (Doc. 15). As such, the issue was fully and fairly presented to the military courts and Petitioner is not entitled to review here.

### C.    *AER Loan*

Petitioner argues that his $1,000.00 Army Emergency Relief ("AER") loan was verified by CID on September 28, 2010, but at the Article 32 Hearing on October 19, 2010, CID denied verifying the loan. Petition (Doc. 1) at 4. Petitioner mentioned the AER loan to the trial court during post-trial proceedings. Answer (Doc. 14), CPT Moy Memo. to LT COL Bovarnick 9/11/2011 (Exh. 29) (Doc. 17-7), Threats Ltr. to MAJ Gen McConville (App'x "A") (Doc. 17-8) at 000337. The trial court addressed the issue in its Findings of Fact & Conclusions of Law. Answer (Doc. 14), Findings of Fact & Conclusions of Law from Post-Trial Hr'g (Exh. "26") (Doc. 17-6) at 000293, 000031–000030. Petitioner also raised this issue within a claim for ineffective assistance of counsel to the ACCA. Answer (Doc. 14), Br. on Behalf of Appellant (Exh. "16") (Doc. 17), App'x "A" at 000143–000146. The ACCA found Petitioner's claims were without merit. Answer (Doc. 14),

Summ. Disposition (Exh. "10") (Doc. 16) at 000057.  Finally, Petitioner raised the issue as part of an ineffective assistance of counsel claim, in his *Grostefon* brief to the CAAF, which was summarily denied.  Answer (Doc. 14), Suppl. to Pet. for Grant of Review (Exh. "3") (Doc. 15), App'x "A" at 000021–000023; Answer (Doc. 14), CAAF Order Denying Pet. (Exh. "1") (Doc. 15).  As such, the issue was fully and fairly presented to the military courts and Petitioner is not entitled to review here.

### D.     Description of Attacker

Finally, Petitioner urges that the victim's description of her attacker did not match him.  Petition (Doc. 1) at 4.  Petitioner raised this issue within a claim for insufficiency of the evidence to the ACCA.  Answer (Doc. 14), Br. on Behalf of Appellant (Exh. "16") (Doc. 17), App'x "A" at 000147–000148.   The ACCA found Petitioner's claims were without merit.  Answer (Doc. 14), Summ. Disposition (Exh. "10") (Doc. 16) at 000057. Petitioner also raised the issue to the CAAF in his *Grostefon* brief as part of an ineffective assistance of counsel claim, which was summarily denied.  Answer (Doc. 14), Suppl. to Pet. for Grant of Review (Exh. "3") (Doc. 15), App'x "A" at 000021–000023; Answer (Doc. 14), CAAF Order Denying Pet. (Exh. "1") (Doc. 15).  As such, the issue was fully and fairly presented to the military courts and Petitioner is not entitled to review here.

## IV.     CONCLUSION

The Court finds that Petitioner's claims were fully and fairly presented to the military courts and Petitioner is not entitled to review.  *Burns v. Wilson*, 346 U.S. 137, 142, 73 S. Ct. 1045, 1049, 97 L. Ed. 1508 (1953) (citing *Whelchel v. McDonald*, 340 U.S. 122, 71 S. Ct. 146, 95 L. Ed. 141 (1950)); *see also Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003); *Lips v. Commandant, U.S. Disciplinary Barracks*, 997 F.2d 808, 810, 811 (10th Cir. 1993).  To the extent that Petitioner did not present his claim regarding DNA evidence to the military courts, it has been waived.  As such, the Court recommends the Petition (Doc. 1) be denied.

## V.     RECOMMENDATION

For the reasons delineated above, the Magistrate Judge recommends that the District Judge enter an order DENYING Petitioner Lonzell J. Threat's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1).

Pursuant to 28 U.S.C. § 636(b) and Rule 72(b)(2), Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Any response to a party's objections shall be filed **on or before March 24, 2021**.  No replies shall be filed unless leave is granted from the District Court.  If objections are filed, the parties should use the following case number:  **CV-17-0542-TUC-JAS**.

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may result in waiver of the right of review.

Dated this 26th day of February, 2021.

Honorable Bruce G. Macdonald
United States Magistrate Judge